# UNITED STATES DISTRICT COURT
for the

District of Oregon

Eugene Division

| | |
|---|---|
| Shawn Michael Bartmess <br> _Plaintiff(s)_ <br> (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) <br> -v- <br><br> Leland Beamer, Karen Harris, Benjamin Smith and Joshua Reese <br> _Defendant(s)_ <br> (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.) | Case No. 6:23-CV-1930-MO <br> _(to be filled in by the Clerk's Office)_ <br><br> Jury Trial Demanded |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Shawn Michael Bartmess |
| All other names by which you have been known: | |
| ID Number | 11294234 |
| Current Institution | Oregon State Penitentiary |
| Address | 2605 State St. |
| | Salem     OR     97310-1346 |
| | *City*     *State*     *Zip Code* |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Dr. Leland Beamer, MD |
| Job or Title *(if known)* | Physician |
| Shield Number | |
| Employer | Oregon Department of Corrections |
| Address | 3920 East Ashwood Rd |
| | Madras     OR     97741 |
| | *City*     *State*     *Zip Code* |

☒ Individual capacity    ☒ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Dr. Karen Harris, DO |
| Job or Title *(if known)* | Chief Medical Officer |
| Shield Number | |
| Employer | Oregon Department of Corrections |
| Address | 2605 State St. |
| | Salem     OR     97310 |
| | *City*     *State*     *Zip Code* |

☒ Individual capacity    ☒ Official capacity

Defendant No. 3
   Name                       Dr. Benjamin Smith, MD
   Job or Title (if known)    Physician
   Shield Number
   Employer                   Oregon Department of Corrections
   Address                    2605 State St.
                              Salem                    OR           97310
                                City                   State        Zip Code
                              ☒ Individual capacity    ☒ Official capacity

Defendant No. 4
   Name                       Dr. Joshua Reese, MD
   Job or Title (if known)    Physician
   Shield Number
   Employer                   Oregon Department of Corrections
   Address                    2605 State St.
                              Salem                    OR           97310
                                City                   State        Zip Code
                              ☒ Individual capacity    ☒ Official capacity

II.  **Basis for Jurisdiction**

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.  Are you bringing suit against *(check all that apply)*:

   ☐ Federal officials (a *Bivens* claim)

   ☒ State or local officials (a § 1983 claim)

B.  Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

   Right under the Eigth Amendment of the United States Constitution to not be subjected to cruel and unusual punishment in the form of deliberate indifference to my serious medical condition(s).

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- ☐ Pretrial detainee
- ☐ Civilly committed detainee
- ☐ Immigration detainee
- ☒ Convicted and sentenced state prisoner
- ☐ Convicted and sentenced federal prisoner
- ☐ Other *(explain)*

## IV. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.
   Not applicable

B. If the events giving rise to your claim arose in an institution, describe where and when they arose.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

      See facts listed in section IV(D)

C.    What date and approximate time did the events giving rise to your claim(s) occur?

      See facts listed in section IV(D)

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

On or around December 22, 2021 while housed at Deer Ridge Correctional Institution ("DRCI") Plaintiff awoke around 3am with a sour stomach and nausea that he was all too familiar with. Those symptoms had plagued Plaintiff on and off for around six years following his multiple bowel resection surgeries due to gunshot wounds he suffered. Plaintiff's symptoms on that day were what he considered to be routine, so he treated them as such. He increased his related medications (Pepto Bismo and Prilosec) and adjusted his diet to bland foods.

Two days passed during which Plaintiff's symptoms worsened. His normal medications were not providing relief. In the early morning of December 24, 2Plaintiff awoke and rushed to the toilet and vomited. Based on past experience Plaintiff's vomit appeared to him to be dried blood (coffee ground consistency). Plaintiff additionally had a coppery taste in his mouth and a rotten meat smell to his breath.

When Plaintiff suffered similar symptoms in the past he had been diagnosed with diverticulitis. In those past episodes he had been treated with oral and IV antibiotics. Due to the current Covid status at Plaintiff's institution he contacted medical through his unit officer by phone. Plaintiff was immediately sent to his institution's medical department for assessment. Plaintiff's vitals were taken, and after a brief explanation of his medical history and reference to his medical file he was instructed by the nurse to continue with his current medications and inform medical of any changes.

Plaintiff expressed to the nurse protocols that were in place for his symptoms but she did not take him seriously. For three more weeks Plaintiff's symptoms continued to worsen. Plaintiff kept medical informed of his concerns and begged to be given the same treatments he had received in the past for the same issue. Plaintiff's pleas for medical care were ignored.

On January 12, 2022 Plaintiff's cellmate and other inmates begged security to escort Plaintiff to medical because his condition had deteriorated to where he was unable to walk on his own. Plaintiff was terrified and believed he was going to die. When Plaintiff arrived at medical he proceeded to vomit on the triage floor. Plaintiff was seen by provider Dr. Beamer and was given an IV and sent to the emergency room via ambulance to St. Charles Hospital in Madras, Oregon.

At the hospital Plaintiff tested positive for Covid and was transferred to St. Charles in Bend, Oregon for treatment and quarantine. During the ambulance ride Plaintiff was administered morphine by IV for severe pain. For the next 24 hours Plaintiff was incoherent. When Plaintiff did regain his senses, he was informed by surgical staff that he had a perforation in his small intestine that had led him to become septic. Plaintiff was further advised that his organs had been shutting down and that he should have received emergency medical much sooner.

The hospital staff asked Plaintiff why he had waited so long to be seen. Plaintiff told them that he had been advising DOC medical of his condition for weeks. Plaintiff made clear to them that it was DOC medical that had waited so long to send him to the hospital.

Plaintiff was hospitalized for an additional twenty days. Plaintiff was then informed he was stable enough to return to the prison. Plaintiff was further told that he was most likely going to need a life changing surgery if the hole in his intestines did not heal in a timely manner. Finally, they told Plaintiff that they estimated it would take approximately four months for his injury to heal.

On February 2, 2022 Plaintiff was transferred from the hospital back to DRCI. Plaintiff's pain medications were reduced to the lowest possible dosage.

Between February 2, 2022 to March 29, 2022 Plaintiff suffered two infections in his left side. That is where the stomach fluids and the undigested contents and pancreatic fluids pooled and created an abscess that had continually infected and the drain keeps a check from it becoming septic. The two infections plaintiff suffered were treated with oral antibiotics—both times longer than the

recommended treatment window for the antibiotics that were prescribed. Plaintiff experienced constant upset stomach, loss of appetite, and nausea. Plaintiff kept DOC medical informed of his symptoms which were causing him weight loss.

Plaintiff's weight loss was a serious concern of St. Charles surgical staff. Plaintiff went to St. Charles Madras, Redmond, and Bend for weekly and biweekly CT scans, x-rays, and follow-up face to face visits with his surgical team to monitor his condition. In mid-March 2022 at a follow-up visit in St. Charles, Bend the attending surgeon expressed concerns about Plaintiff's continued weight loss and advised him that there would be a consultation with the rest of the surgical team and OHSU's surgical team. They felt that it was at a point where Plaintiff should have a feeding tube installed. They would schedule Plaintiff to be seen again in two weeks where this would be done. Once the feeding tube was in place Plaintiff would no longer be able to be housed within DOC as he would need to be hospitalized the duration of the period his feeding tube was in place.

Upon returning to DRCI, Plaintiff notified DOC medical staff of what the hospital staff had told him. Instead of waiting for the upcoming appointment in two weeks for my feeding tube installation, Dr. Beamer had me transferred to OSP's infirmary. Dr. Beamer claimed that in consultation with the surgical team in Bend, himself, and DOC's TLC Committee everyone deemed it necessary that I be housed in an environment more appropriate for his medical condition. Dr. Beemer also notified Plaintiff that he had an emergency scheduled appointment in about a week with Dr. Martindale who was the fistula specialist at OHSU. The emergency appointment was due to the seriousness of Plaintiff's condition and complications.

On March 29, 2022 Plaintiff was transported from DRCI to Oregon State Penitentiary ("OSP") and was lodged in OSP's Infirmary. Upon arrival at OSP Plaintiff was forced to sit in R&D for two hours because OSP medical was not expecting him for another 14 days—and they were expecting him to already have a feeding tube. The following day Plaintiff spoke with Dr. Benjamin Smith for assessment. Plaintiff informed him of all issues from December 25, 2022 to that date. Dr. Smith expressed confusion because there was no appointment scheduled with Dr. Martindale at OHSU.

Plaintiff found out at that time that per DOC practices or procedures all treatments and appointments made by previous providers are cancelled when an inmate is transferred. The only exception is when an inmate is transferred from one hospital to another.

As a result of DOC procedures, the providers at OSP would now have to schedule with Dr. Martindale before Plaintiff could continue his weekly checkups, x-rays, and CT scans used by surgeons to document the current status of his infections. On April 2, 2022 Dr. Joshua Reese came to Plaintiff's bunk and informed Plaintiff that he had been in contact with Dr. Martindale's office and that Plaintiff would be scheduled to see Dr. Martindale in two to three months (ended up being June 6th). Plaintiff inquired about the weekly appointments at the hospitals that he had been receiving while at DRCI. Dr. Reese informed Plaintiff that none of that could happen without a current assessment from Dr. Martindale.

By this point Plaintiff was nearing the end of the four-month window for natural healing to occur. Plaintiff should have been in pre-op for surgery per recommendations of St. Charles Bend surgical team. This early transport to OSP put Plaintiff at a minimum of 2 months behind schedule. With each day of delay Plaintiff continued to suffer. From April 1-June 8 Plaintiff's routine was daily checks of his vitals with dressing changes on his JP drain site, and weekly checkups with either Dr. Reese or Dr. Smith. The only deviation during this time was having three localized infections at the drain site requiring oral antibiotics and two trips to Salem Health-one for a cracked picock on the JP drain and the other for a CT scan to see if the drain was still properly placed after it being partially pulled out when Plaintiff caught it on the bed rail while sleeping.

On June 8, 2022 Plaintiff had his first appointment with Dr. Martindale who expressed frustration that

from April to June there had not been any imaging done by DOC medical which he needed to assess the current condition of Plaintiff's abscess and fistula. Dr. Martindale expressed disgust that such a protocol could be in place by a state institution. This visit was short due to the doctor having to order a current CT scan and a fistulogram which were needed for assessment. A reschedule request to DOC was submitted by his office.

After returning to OSP and medical receiving the orders the CT scan was performed within two weeks at Salem Health. Two weeks later Plaintiff returned to Dr. Martindale's office where he performed the fistulogram himself. From June 8 to August 2 Plaintiff's medical treatments in the infirmary were identical as the months prior. On August 2 Plaintiff was discharged from the infirmary by Dr. Reese on the grounds of being assessed as "medically stable." That went against what provider Dr. Leland Beamer at DRCI, the TLC Committee, the St. Charles Bend surgical team, Dr. Reese, and Dr. Smith had been informing Plaintiff—that as long as the JP drain was installed that Plaintiff would have to be housed in the infirmary.

Plaintiff's discharge came oddly just less than 12 hours after he had a verbal disagreement with Medical Services Manager Carrie Coffey regarding him spending (in her personal opinion) too much time with a handicapped friend who was in general population. Ms. Coffey felt that if Plaintiff liked being in general population so much he should live there. Upon discharge from the Infirmary Plaintiff's stair restriction and elevator pass were revoked and he was housed in a third-floor cell with a gang member.

From March 29, 2022 to August 2, 2022 Plaintiff was housed in OSP's Infirmary. On August 2, 2022 Plaintiff was transferred to general population. Plaintiff faced constant indifference to his pain and discomfort from all associated providers with the nurses caught in the middle. From the date of Plaintiff's discharge his pain medications were discontinued and his elevator pass and stair restriction revoked. Plaintiff's request for a single cell on the ground floor was denied and instead he was placed me on a third-floor cell with another inmate. Plaintiff repeatedly advised medical staff that climbing stairs pulled at his abdominal incision and caused him a great deal of pain.

Those actions went against the recommendations of St. Charles medical and surgical team. The primary reason Plaintiff was transferred from DRCI to the OSP infirmary was that he was constantly dealing with infections of the wound site. Plaintiff's health continued to deteriorate. From the time of my return from St. Charles, Bend the nurses repeatedly expressed that their hands were tied by his DOC medical providers, the TLC committee and the Administrators.

On or about September 5, 2022 Plaintiff expressed his safety concerns to Capt. Alvis who sent Plaintiff to Group Living. Plaintiff stated his case to Cpl. Holmes which was verified by Ofc. Castante. Plaintiff was then moved to a bottom tier single cell. After being discharged from the infirmary Plaintiff received a medical pass for showers five days a week in general population but no longer received the waterproof Tegaderm dressing that prevented infectious fluids from entering his JP drain site. Since January 12th those waterproof dressings had been applied prior to each time Plaintiff showered.

Not having a waterproof dressing caused Plaintiff's hospitalization in September with a septic abscess. From August 2, 2022 to September 5, 2022 every other day Plaintiff expressed his concern to medical that without the Tegaderm dressing Plaintiff was at significant risk of acquiring an infection. Medical staff took no action.

On September 5, 2022 upon admittance to Salem Health Plaintiff's WBC count was so high he received immediate IV antibiotics. Because of the extent of the infection Plaintiff required a new JP drain installed. Plaintiff asked the hospital prescription pain medication to follow him to the institution. The institution denied that order. Salem Health ordered continuous Tegaderm drain dressings to avoid a repeat infection.

On October 8, 2022 Plaintiff met again with Dr. Martindale. The imaging results from June and from

September showed that the perforation in Plaintiff's small intestine had not healed. The doctor expressed to Plaintiff that in his expert opinion without surgical intervention Plaintiff's wound would not heal. That had already been the diagnosis from the St. Charles Bend surgical team. Plaintiff was supposed have had a final evaluation and consultation with Dr. Martindale in January of 2023 (which did not occur). Between October of 2022 and January of 2023, Dr. Martindale would consult with St. Charles Bend surgical team and OHSU's surgical team and brief Plaintiff on the process for his upcoming surgery. Dr. Martindale informed Plaintiff at this time that if Plaintiff had the surgical procedure (called a bowel resection or fistula takedown) that it would take roughly 45-60 days to schedule which would place it sometime in March of 2023. The team would remove as much as 10cm of Plaintiff's small intestine and up to ¼ of his remaining stomach.

Since Plaintiff's return from Salem Health on September 7, 2022 he has been in constant pain. Dr. Karen Harris told Plaintiff that she does not deem pain medications necessary—even though recommended by Dr. Martindale.

On December 3, 2022 around 2am Plaintiff woke up with sharp abdominal pain underneath his left ribs. At sick call during Plaintiff's dressing change the nurse said the site looked fine but would document Plaintiff's current discomfort in his chart and refer it to his provider. On December 4, 2022 Plaintiff was informed by the sick call nurse that he should go to the 6am triage line if his pain increased. On December 5, 2022 Plaintiff went to triage to make sure all issues were documented. The triage nurse told Plaintiff she saw no signs of immediate distress and that Plaintiff's vitals were appropriately normal. The nurse told Plaintiff she would document the issue and to keep them updated with any changes. From December 6, 2022 through December 8, 2022 no change in discomfort but at sick call dressing change while the nurse was injecting the daily flush it was extremely resistant. She said she would document that.

On December 9, 2022 while at sick call dressing change Plaintiff notified the nurse that his pain had increased to twice what it was before. When she tried to flush the drain, she discovered it was clogged. She called in provider Dr. Harris from the next room over. Dr. Harris attempted to flush the drain. After five unsuccessful attempts it finally flushed but with very little drain. Dr. Harris told Plaintiff she was not concerned and that it probably meant the fluids were dried up inside and that Plaintiff's JP drain could be removed.

On December 10, 2022 Plaintiff felt bloated and full and could not sleep. Plaintiff's JP drain had not drained anything in two days. Plaintiff told the nurse at sick call dressing change. She tried to flush Plaintiff's drain again, and again it would not flush. Plaintiff was told this would be documented thin his file because Dr. Harris was unavailable to asses at that time. On December 12, 2022 the drain would still not aspirate. When Plaintiff inquired about a chart review the nurse reviewed the computer screen and verified that there were three requests made by the sick call nurses for an emergency chart review by Dr. Harris, but that no chart review had occurred.

On December 13, 2022 Plaintiff went to triage again. The on-duty nurse had much history with Plaintiff's situation and was deeply concerned. She promised to return to medical at the end of triage time and take the issue to Dr. Harris or anyone who would listen. She told Plaintiff that she believed he needed to me immediately sent to the hospital for emergency treatment. A few hours later Plaintiff was called to medical. Dr. Harris was waiting with the sick call dressing change nurse as well as the nurse from triage.

Dr. Harris examined the JP drain site, attempted to aspirate for 15 minutes, then stated the obvious, that the drain was not aspirating, and had either malfunctioned or the abscess was done and the drain was no longer needed. Plaintiff asked her if she was going to send him to the hospital. She said she would just pull the drain herself and save the trip. Plaintiff explained to her that the procedure had to be done under an x-ray machine because the drain contained a metal wire that straightened pigtail at the end. Dr. Harris informed Plaintiff that he did not know what he was talking about. At that time, she attempted to

pull the drain out. She was able to extract the drain-roughly three to four inches, at which time the pig tail came up against the inside of Plaintiff's rib cage and bulged his side out, causing excruciating pain. After several pleading requests for her to cease, she stopped and said she would send Plaintiff to the hospital.

Upon arrival at Salem Hospital, Plaintiff remained 22 hours in a room where the ER staff notified him that his tube would need to be replaced. Plaintiff received a CT scan showing a 6mm fluid pocket caused by the drain not draining for the last four days. Plaintiff had the tube replaced the following day. During the fistulogram and JP replacement the specialist expressed disgust and outrage upon learning that Dr. Harris knowingly attempted to remove a JP drain without proper equipment or following proper procedures.

While removing the JP drain the specialist found a large clog inside of the pigtail. The specialist was concerned that if the clog could not be removed and the pig tail straightened Plaintiff would need immediate emergency surgery. Upon removal of the drain, roughly 50ml of thick sticky puss exited the hole in Plaintiff's side. A new drain was then successfully installed. The specialist recommended twice daily flushes and daily dressing changes with Tegaderm to avoid reoccurrence of infection of malfunction of the drain. Plaintiff was then discharged from the hospital and returned to OSP.

This specialist's recommendation was not followed. Plaintiff received a once daily flush with waterproof Tegaderm for almost two weeks before it started to occur twice daily. The change to twice daily only occurred because Plaintiff's JP drain and site started excreting excessive amounts of fluid causing soaked dressings. Sick call nurses felt uncomfortable doing a flush without a dressing change. From December 19, 2022 to January 10, 2023 nothing changed. On January 10, 2023 while at dressing change nurse Samantha Bailey expressed concern over the yellow thick fluid in Plaintiff's JP tube and on his soiled dressing. She took a culture and sent it to Salem Health lab for evaluation. The results came back four days later with three types of bacteria that were causing an infection. Nurse Bailey consulted with Dr. Harris who prescribed Plaintiff a ten-day course of the antibiotic Cipro.

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

See facts listed in section IV(D)

## VI. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

I seek $500,000.00 from each defendant in compensatory damages, and $2,000.000.00 against each defendant in punitivage damages.

## VII. Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A. Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Deer Ridge Correctional Institution and Oregon State Penitentiary

B. Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C. Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

All of my claims

D. Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☒ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E. If you did file a grievance:

1. Where did you file the grievance?

   Oregon State Penitentiary

2. What did you claim in your grievance?

   That Health Services staff--including the named defendants--were aware of my serious medical conditions and were not treated in a timely or adequate manner

3. What was the result, if any?

   All grievances were given the stock response

4. What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

   I fully exhausted all grievances when physically capable to do so. Any grievance I did not fully exhaust was because my health was in such poor condition and/or I was in the hospital

F. If you did not file a grievance:

   1. If there are any reasons why you did not file a grievance, state them here:

      See answer to VII(E)(4) - additionally, for any grievances not filed it was because the grievance procedure at ODOC does not in my experience ever result in any meaningful relief

   2. If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

      Not applicable

G. Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

   When I was transferred from DRCI to OSP all of my medical records were lost by transport staff. At the time ODOC required exhorbant fees to replace the records. Because I did not have sufficient funds for replacement I did not have the records needed to properly grieve

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.  Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

   ☐ Yes

   ☒ No

B.  If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

   1. Parties to the previous lawsuit
      Plaintiff(s) _____
      Defendant(s) _____

   2. Court *(if federal court, name the district; if state court, name the county and State)*
      _____

   3. Docket or index number
      _____

   4. Name of Judge assigned to your case

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

5. Approximate date of filing lawsuit

_____

6. Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition. _____

7. What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

C. Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☒ No

D. If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1. Parties to the previous lawsuit

Plaintiff(s) _____

Defendant(s) _____

2. Court *(if federal court, name the district; if state court, name the county and State)*

_____

3. Docket or index number

_____

4. Name of Judge assigned to your case

_____

5.  Approximate date of filing lawsuit

    _____

6.  Is the case still pending?

    ☐ Yes

    ☐ No

    If no, give the approximate date of disposition _____

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

    _____

## IX.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.  For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 12/18/2023

Signature of Plaintiff  *[signature: Shawn M. Bartmess]*
Printed Name of Plaintiff  Shawn Michael Bartmess
Prison Identification #  11294234
Prison Address  2605 State St.
Salem    OR    97310-1346

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

|  | *City* | *State* | *Zip Code* |

**B.   For Attorneys**

Date of signing: _____

Signature of Attorney _____
Printed Name of Attorney _____
Bar Number _____
Name of Law Firm _____
Address _____

|  | *City* | *State* | *Zip Code* |

Telephone Number _____
E-mail Address _____