IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SHAWN MICHAEL BARTMESS,

        Plaintiff,

v.

DR. LELAND BEAMER, DR. KAREN HARRIS, DR. BENJAMIN SMITH, and DR. JOSHUA REESE,

        Defendants.

No. 6:23-cv-1930-MO

OPINION AND ORDER

MOSMAN, J.,

    Plaintiff Shawn Michael Bartmess, who is proceeding without counsel, brings this lawsuit under 42 U.S.C § 1983 alleging that Defendants violated his Eighth Amendment rights by providing him inadequate medical care while he was in the custody of the Oregon Department of Corrections ("ODOC"). Compl., [ECF 1] at 6–10.[1] This matter is currently before me on Defendants' Motion for Summary Judgment. Mot. for Summ. J., [ECF 36]. As explained below, I GRANT Defendants' Motion.

///

///

---

[1] Bartmess was released from ODOC's custody on December 20, 2024. Decl. of Joshua Lawson, [ECF 37] at ¶ 3.

1 – Opinion and Order

## BACKGROUND

**I.    The Complaint**

On December 20, 2023, Bartmess filed a form Complaint against ODOC physicians Leland Beamer, Benjamin Smith, and Joshua Reese and ODOC Chief Medical Officer Karen Harris. *See generally* [ECF 1]. Bartmess alleges that between December 22, 2021, and January 10, 2023, while he was confined at the Deer Ridge Correctional Institution ("DRCI") and the Oregon State Penitentiary ("OSP"), he received inadequate medical treatment from Defendants. *Id.* Bartmess seeks damages against each Defendant. *Id.* at 11.

Specifically, Bartmess alleges the following. On January 12, 2022, he was seen by Dr. Beamer at DRCI. on January 12, 2022, for symptoms related to his multiple bowel resection. These symptoms started in late December 2021 and had worsened to the point where Bartmess was unable to walk. *Id.* at 6. Dr. Beamer administered an IV, and Bartmess was taken to St. Charles Hospital, where he had emergency surgery for a perforation in his small intestine. *Id.* Bartmess stayed in the hospital for 20 days. *Id.* When he was stable enough to be transferred back to the DRCI, hospital staff told Bartmess that he would need "a life changing surgery" if the perforation in his intestines did not heal and that healing would take about 4 months. *Id.*

Between February 22, 2022, and March 29, 2022, Bartmess suffered two infections in his left side where he had a "continually infected abscess" and a "[JP] drain" that kept it from "becoming septic. *Id.* at 6. Bartmess experienced constant upset stomach, loss of appetite, and nausea, which caused him to lose weight. During that period, Bartmess went back and forth between St. Charles Hospital and DRCI for treatment. *Id.* at 6–7. Because of his weight loss, St. Charles hospital's surgical team consulted with Oregon Health and Sciences University's ("OHSU") surgical team and the teams decided that Bartmess should have a feeding tube placed

2 – Opinion and Order

at OHSU *see id.* at 7 (describing the two team's decision regarding the feeding tube installation and the appointment that Bartmess thought was scheduled at OHSU).

Instead of waiting for Bartmess's feeding tube to be installed, Dr. Beamer transferred him to OSP's infirmary because it was "an environment more appropriate for his medical condition" on March 29, 2022. *Id.* Bartmess saw Dr. Smith the day after he arrived at OSP and explained "all [the] issues from December 25, 202[1] to that date". *Id.* Dr. Smith, however, was confused about Bartmess's treatment because Dr. Smith did not see an appointment scheduled for Bartmess at OHSU. *Id.* Bartmess later learned that per ODOC procedures, all existing appointments are cancelled when an inmate is transferred. *Id.*

About a month later, Dr. Reese told Bartmess that he had spoken with the doctor at OHSU and that Bartmess would see the doctor at OHSU in a few months. Bartmess saw the OHSU doctor in June 2022. *Id.* at 6–7. Bartmess continued receiving treatment for his symptoms, and he was housed in OSP's infirmary from March 29, 2022, through August 2, 2022, when Dr. Reese discharged him to the general population because he was "medically stable." *Id.* at 8. Bartmess's discharge, however, was contrary to the advice that he had previously received; Dr. Reese along with Drs. Beamer and Smith, the St. Charles Hospital surgery team, and the Therapeutic Level of Care ("TLC") committee had all stated that "as long as the JP drain was installed that Plaintiff would have to be housed in the infirmary." *Id.*

After he was moved to the general population, Bartmess's health deteriorated. *Id.* Bartmess was admitted to Salem Health on September 5, 2022, due to an infection, and he had a new JP drain installed. *Id.* After he returned to OSP from Salem Health on September 7, 2022, Bartmess was in constant pain. *Id.* at 9. Around that time, Dr. Harris told him that pain medication was not necessary even though the doctor at OHSU had recommended it. *Id.* at 9. Bartmess saw Dr. Harris

3 – Opinion and Order

on December 9, 2022, when he was at a "sick call dressing change," and she tried to flush his JP drain. *Id.* After five unsuccessful flush attempts, Dr. Harris told Bartmess that she was not concerned, the "fluids were probably dried up" and he could get the drain removed. *Id.* On December 13, 2022, Dr. Harris tried to aspirate Bartmess's drain for 15 minutes. *Id.* She told Bartmess that she thought that he no longer needed the drain, and she would pull it herself. *Id.* Despite Bartmess's protests, Dr. Harris tried to pull his drain out, but was only able to pull it out 3-4 inches before "the pig tail came up against the inside of plaintiff's rib cage . . . causing him excruciating pain." *Id.*

After several requests, Dr. Harris finally agreed to stop trying to pull out the drain and sent Bartmess to the hospital. *Id.* at 9. Hospital staff were "disgusted and outraged" that Dr. Harris had tried to remove without the right equipment and without using the right procedure. *Id.* A specialist found a large clog in the pig tail of Bartmess's drain and recommended twice daily flushing and daily dressing changes to prevent infection and another drain malfunction. *Id.* OSP did not follow the specialist's instructions. *Id.* On January 10, 2023, a culture was taken of thick, yellow fluid from Bartmess's drain site and it had three types of bacterial that had caused an infection. Dr. Harris prescribed Bartmess a 10-day supply of antibiotics for his infection. *Id.* at 10.

Bartmess asserts that before filing his Complaint, he exhausted his administrative remedies "when physically able to do so" by using the grievance procedures available at OSP. *Id.* at 11–13. He asserts that [a]ny grievance that I did not fully exhaust was because my health was in such poor condition and/or I was in the hospital" and that because transport staff lost his medical records when he was transferred from DRCI to OSP and he was not able to afford the "exhorb[itant] fees to replace [them]" he "did not have the records needed to properly grieve." *Id.* at 13.

4 – Opinion and Order

## II. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the federal claim[2] in Bartmess's Complaint on July 9, 2025, asserting that they there are entitled to judgment as a matter of law on three grounds: (1) Bartmess did not exhaust all his available administrative remedies before he filed his Complaint against Defendants, (2) the Eleventh Amendment bars Bartmess's claims against Defendants in their official capacities, and (3) the only grievance that Bartmess exhausted addressed an allegation against Defendant Harris that he did not make in his Complaint. [ECF 36] at 3.

In support of their motion, Defendants offer evidence about ODOC's grievance process, including the requirements to exhaust a grievance, and Bartmess's grievances. [ECF 37]. ODOC processes grievances in accordance with the Oregon Administrative Rules. *Id.* at ¶ 5. Adults in custody (AICs) are given instructions about the grievance process in an orientation class and the information is included in the AIC handbook and is available with the grievance forms, which are available on all housing units. *Id.* at ¶ 6. There is a limit on the number of active grievances—four—that an AIC may have open at one time. *Id.* at ¶ 7. To exhaust a grievance, an AIC must file a first level appeal and a second level appeal (also called a final appeal). *Id.* at ¶ 8–9. The Assistant Director's or her designee's decision on an AIC's second level or final appeal is a final decision that is not subject to further administrative review. *Id.* at ¶ 10.

ODOC's grievance coordinator "made a thorough search of [his] records" and found one grievance that Bartmess filed about Dr. Harris that related to his allegations in this lawsuit, but Bartmess did not administratively exhaust this grievance; after receiving a response to his first level appeal he did not submit a second level appeal. *Id.* at ¶¶ 12–16. ODOC's records show that

---

[2] Bartmess makes only one claim in his Complaint—an Eighth Amendment claim against all Defendants. [ECF 1] at 3.

5 – Opinion and Order

Bartmess filed two other grievances about issues that happened during the timeframe referenced in his Complaint, but those events are not referenced in his Complaint. *Id.* at ¶¶ 17–26. Bartmess grieved issues that happened outside the December 2021 to January 10, 2023, timeframe alleged in his Complaint, but only he only exhausted one of these grievances—a grievance about Dr. Harris concerning events that occurred in May 2023. *Id.* at ¶¶ 27–41. Bartmess did not file any grievances about Drs. Beamer, Smith, or Reese. *Id.* at ¶ 42.

### III.    Fair Notice and Time to Respond

On July 11, 2025, I issued a Summary Judgment Advice Notice and Scheduling Order, which advised Bartmess of what he needed to do to oppose Defendant's motion for summary judgment and stated the deadline for filing a response. Notice, [ECF 38]. On August 11, 2025, Bartmess filed a Response, which explained that he needed additional time to respond. Response, [ECF 39]. On September 5, 2025, I granted Bartmess a 45-day extension of time to file a response. Order, [ECF 40]. To date, Bartmess has neither responded to Defendants' motion nor sought an extension of time to do so.

## DISCUSSION

### I.    Legal Standards

A court should grant summary judgment when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no real dispute about a genuine issue of material fact, if when "viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008) (cleaned up). On the other hand, a genuine dispute of material fact

6 – Opinion and Order

exists and precludes summary judgment "if a reasonable juror, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Id.*

The Prison Litigation Reform Act requires prisoners to exhaust all available administrative remedies before filing "any suit challenging prison conditions," including actions brought under 42 U.S.C § 1983. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The exhaustion requirement applies only to available administrative remedies, and "available" means accessible "as a practical matter." *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) (*abrogated in part on other grounds by Perttu v. Richards*, __U.S.__, 145 S. Ct. 1793 (2025). Accordingly, when a defendant seeks summary judgment for failure to exhaust administrative remedies, the defendant's "burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. If the defendant meets its burden, the inmate has the burden of production—the inmate must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of proof on the issue of exhaustion, however, always remains with the defendant. *Id.*

## II. Eleventh Amendment Bar

Because it concerns whether I have the power to consider the official capacity claims against Defendants—or more legally put, is a jurisdictional issue—I first consider Defendants' Eleventh Amendment argument. *See Edleman v. Jordan*, 415 U.S. 651, 677–78 (1974). The Eleventh Amendment bars a federal court action for damages brought by a citizen against a state official acting in his or her official capacity. *Id.* at 663. Accordingly, Bartmess's claims against

Defendants in their official capacities are barred by the Eleventh Amendment and must be dismissed with prejudice. *See id.* Bartmess's claims against Defendants in their personal capacities based upon actions taken under color of law, however, are not barred. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); [ECF 1] at 2–3 (stating Bartmess's claims are against Defendants in both their official and individual capacities).

### III.  Failure to Exhaust Administrative Remedies

As set forth above, Defendants bear the burden of proof in seeking summary judgment on Bartmess's claims against Defendants in their individual capacities for failure to exhaust. *Albino*, 747 F.3d at 1166. They must prove both that an administrative remedy was available and that Bartmess did not exhaust it. *Id.* at 1172.

I find that there is no genuine issue of fact regarding Bartmess's failure to exhaust his administrative remedies. Defendants have submitted evidence that an administrative grievance process was generally available. [ECF 37] at ¶ 6; *see also* [37-2]. Inmates are informed about the grievance process during the orientations they receive upon arriving at an ODOC facility, and grievance forms are available on all housing units and instructions are available with the forms. [ECF 37] at ¶ 6. Defendants have also submitted evidence that Bartmess did not exhaust his administrative remedies. [ECF 37]. Plaintiff filed his Complaint on December 20, 2023. [ECF 1]. In September 2022, Bartmess grieved Health Services and Dr. Harris's lack of concern that he might be suffering from a life-threatening internal infection. [ECF 37] at ¶ 12. Bartmess did not, however submit a second level appeal after receiving the response to his first-level appeal as required to complete the administrative review process. *Id.* at ¶ 16. The same is true of the other grievances that Bartmess submitted in September and October 2022. *Id.* at ¶¶ 17–26.

8 – Opinion and Order

In his Complaint, Bartmess makes conclusory statements that any failure to exhaust his administrative remedies was due to illness or hospitalization and that any failure to file a grievance was based on his experience that "the grievance procedure at ODOC does not . . . ever result in any meaningful relief." [ECF 1] at 13. Unfortunately, all we have are these allegations in the Complaint. Bartmess never filed a response, nor did he in any manner provide any specific facts supporting his failure to exhaust. And, of course, his lack of confidence in the administrative process is no excuse. His conclusory statements do not adequately show that there is something that made the generally available administrative remedies effectively unavailable to Bartmess. *See Albino*, 747 F.3d at 1166. It is also noteworthy that during the general time period in which he says he was unable to pursue administrative relief he took some steps to do so, albeit incomplete. Accordingly, I find that the undisputed evidence viewed in the light most favorable to Bartmess shows a failure to exhaust available administrative remedies and that Defendants are entitled to summary judgment on Bartmess's claim against them. *See* Fed. R. Civ. P. 56(a); *Ross v. Blake*, 578 U.S. 632, 641 (2016) (the PLRA's history "underscores the mandatory nature of its exhaustion regime"); *Sheltra v. Christensen*, 124 F.4th 1195, 1200 (9th Cir. 2024) ("The PLRA requires inmates to exhaust administrative remedies before filing suit").

### III. Bartmess's Only Exhausted Claim Does Not Address Issues in his Complaint

Finally, I agree with Defendants that Bartmess's exhausted May 2023 grievance does not save this lawsuit from dismissal for failure to exhaust administrative remedies. *See* [ECF 36] at 13–14. In May 2023, Bartmess grieved Dr. Harris's refusal to evaluate his medical condition after the removal of his JP drain and to schedule him for evaluations by a gastroenterologist based on his expected release from prison in December 2024. [ECF 37] at ¶ 27. Bartmess submitted this grievance approximately 4 months after he filed this lawsuit. *Id.* Moreover, none of the allegations

in Bartmess's Complaint relate to the allegations in his May 2023 exhausted grievance. *Id.* Accordingly, I find that Bartmess's exhausted May 2023 grievance cannot serve the PLRA's purpose of giving ODOC officials a full opportunity under the procedures adopted by ODOC to address Bartmess's concerns before the filing of a federal lawsuit. *See Woodford*, 548 U.S. at 89.

## CONCLUSION

For the reasons set forth above, I GRANT Defendants' Motion for Summary Judgment [ECF 36] and dismiss this matter with prejudice.

IT IS SO ORDERED.

DATED this 18th day of November, 2025.

MICHAEL W. MOSMAN
United States District Judge

10 – Opinion and Order